UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| IKECHUKWU NDU, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00353-JAW |
| | ) | |
| UNIVERSITY OF MAINE SYSTEM, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

On August 4, 2025, Ikechukwu Ndu filed his first amended complaint (FAC) against his former employer, the University of Maine System, alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act of 1990 (ADA), the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Age Discrimination in Employment Act of 1967 (ADEA), the Equal Pay Act of 1963 (EPA), and related Maine state statutes.  FAC (ECF No. 9).[1]  Ndu has since moved to amend his complaint a second time to substitute the WPEA claim with the Maine equivalent and to add a claim under the Maine Human Rights Act (MHRA). Motion to Amend (ECF No. 23) at 2.

On October 28, 2025, the University filed a motion to dismiss, asserting that Ndu's claims are barred by a memorandum of understanding (MOU) he signed prior

---

[1] The Complaint was originally filed against the University of Southern Maine and several individual employees of that University. Complaint (ECF No. 1) at 2-3.  Ndu later filed an amended complaint without the individuals named as defendants.  *See* FAC (ECF No. 9).  Therefore, Ndu's case is only against the University of Maine System.  An "amended complaint completely supersedes [the] original complaint, and thus the original complaint no longer performs any function in the case." *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) (cleaned up).

to his voluntary resignation.  Motion (ECF No. 17).  The MOU included a general release of employment-related claims in exchange for $144,841.52.    MOU (ECF No. 17-1).[2] Ndu filed a response with sixteen attached exhibits, including a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC).[3] *See* ECF No. 20-1 to 20-16.  The authenticity of the right to sue letter and the MOU is not disputed by either party.

> The MOU reflected the following agreement between the parties:

> In consideration of the promises and undertakings of the University herein, Dr. Ndu, for himself, his heirs, executors, assigns and successors, hereby releases and forever discharges separately and collectively the University, together with the University's affiliated campuses, and its directors, trustees, officers, employees, agents, successors, insurers and assigns, and each and all thereof, of and from *any and all manner of actions, suits, damages, attorney fees, and claims of whatsoever kind or nature*, in law or in equity, whether known or unknown, suspected or unsuspected, now existing or which may result, as of the effective date of this Agreement . . . .

MOU ¶ 11 (emphasis added).

Ndu argues that he was "forced" to sign the MOU because the University left him with no reasonable alternative.  Response (ECF No. 20) at 1.  He states that after emailing a university dean about alleged discrimination in the review of his publications and during his contract renewal process, he was called to a meeting with a university official and his union representative.  *Id.* at 6.  Following a discussion of

---

[2] The University attached several documents to its motion to dismiss, including the MOU. *See* ECF No. 17-1.

[3] After the University filed its motion to dismiss, Ndu moved for leave to file a second amended complaint. ECF Nos. 21, 23. As explained below, the MOU bars this action, and its enforceability is unaffected by any amendment that Ndu could make.  Therefore, the motion for leave to file a second amended complaint should be denied.

his employment-related health issues, a university official informed him that "there was no way or situation [that he] could continue working for the [University]." *Id.*

This meeting occurred on August 20, 2024. *Id.* at 4-5. Ndu received the MOU via email a few days later. *Id.* He signed it on August 24, 2024, and in doing so acknowledged that "(1) he was advised in writing to consult with an attorney before executing the Agreement, and (2) that he had a period of twenty-one (21) calendar days within which to consider this Agreement and he may use as much of the 21-day period as he wishes prior to signing." MOU ¶ 18 (cleaned up). The agreement took effect on August 31, 2024, after the seven-day period during which Ndu had the right to revoke it.[4] *Id.* ¶ 19.

## I. Legal Standard

A court reviewing a motion to dismiss for failure to state a claim must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (cleaned up). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (cleaned up).[5]

---

[4] Although not part of the motion to dismiss record, Ndu argues that he was not able to obtain the advice of counsel because he was hospitalized following his resignation from the University. Response at 8. However, the exhibit he cites for that assertion shows that he was admitted to a hospital in Connecticut nearly two months after signing the agreement. *Compare* MOU at 5, *with* Exhibit 10 (ECF No. 20-6). In its entirety, the exhibit reads as follows: "Ike Ndu was admitted on 10/22/2024. He may work from home until follow up appointment in the clinic where work status will be re-evaluated." ECF No. 20-6 (cleaned up).

[5] The University's motion to dismiss also raises an argument under Rule 12(b)(1), which allows a party to move to dismiss the case on the grounds that the Court lacks subject matter jurisdiction. Rule 12(b)(3) adds that the Court "must" dismiss the case if it determines there is no subject matter jurisdiction. The University argues that it is entitled to sovereign immunity in relation to Ndu's WPEA

3

Courts apply a "two-pronged approach" to assess the adequacy of a complaint. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will take the complaint's well-pleaded "(i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## II. Discussion

Ndu's complaint should be dismissed for two reasons. First, the MOU is enforceable, and its broad release covers the claims presented. Second, the federal claims are either time-barred or lack factual support, and the pendent state claims

---

claim. Motion at 2. Because, however, Ndu moved to amend that claim and it is subject to dismissal for different reasons, I do not analyze the immunity issue. Thus, the facts relevant to deciding the motion to dismiss are limited to the well pleaded facts in the complaint and the MOU because its authenticity is not disputed by the parties.

4

should be dismissed because retaining jurisdiction exclusively on state claims at this early stage of the litigation would be an abuse of discretion.

### A. The MOU is enforceable.

Because the authenticity and scope of the MOU are not in dispute, it may be considered at the motion to dismiss stage without converting the motion into one for summary judgment. *Id.* Ndu argues that he was "forced" to sign this agreement because he thought there was no reasonable alternative. Response at 1, 6. Essentially, Ndu raises an economic duress argument to rescind the MOU and avoid its restrictions. *Id.* at 1-2, 6, 8. There are two problems with this argument. First, the record indicates that Ndu knowingly and voluntarily entered into the MOU free of duress. Second, even if Ndu was under economic duress when he entered into the agreement, he would need to return the consideration he received from the University to move forward with his claims. Each issue is addressed more fully below.

The First Circuit has stated that rights conferred by Title VII, like many other rights created by federal statutes, may be surrendered by executing a release. *See Melanson v. Browning-Ferris Indus., Inc.,* 281 F.3d 272, 274 (1st Cir. 2002). To be enforceable, the waiver must be knowing and voluntary. *Id.* In evaluating this standard, courts look to the totality of the circumstances to determine whether an employer has adequately demonstrated that an employee's asserted waiver was knowing and voluntary. *See Smart v. Gillette Co. Long-Term Disab. Plan,* 70 F.3d 173, 181 (1st Cir. 1995). Factors that aid this analysis include the following:

> (1) the plaintiff's education, business experience, and sophistication; (2) the parties' respective roles in deciding the final terms of the

arrangement; (3) the agreement's clarity; (4) the amount of time available to the plaintiff to study the agreement before acting on it; (5) whether the plaintiff had independent advice—such as the advice of counsel—when [signing] the agreement; and (6) the nature of the consideration tendered in exchange for the waiver.

*Id.* at 181 n.3.

Ndu is an experienced professional with a doctoral degree who has taught undergraduate and MBA courses at the University. FAC at 4, 7. By signing the MOU, Ndu confirmed that he had been notified in writing that "he was advised to consult with an attorney" before signing the agreement, that he had twenty-one days to consider the agreement before signing, and that he could revoke the agreement for any reason by contacting the University's General Counsel within seven days of signing. MOU ¶¶ 18-19. The University paid him $144,841.52 in exchange for the release. *Id.* ¶ 6. The totality of these facts shows that Ndu knowingly and voluntarily agreed to a broad release of claims from his employment with the University.

Even assuming that Ndu signed the MOU under duress, he ratified its terms by retaining the consideration paid under the agreement. A contract may be voidable if it is entered into under duress. *S. Bay Bos. Mgmt. v. Unite Here, Local 26*, 587 F.3d 35, 41 (1st Cir. 2009). However, the party under duress may still ratify its terms by retaining the benefits conferred. *Deren v. Digital Equip. Corp.*, 61 F.3d 1, 2 (1st Cir. 1995) (affirming a district court's conclusion that "[s]ince plaintiffs concededly have retained the benefits of the alternate severance package, the district court concluded that their suits were not viable"). Thus, a party seeking to rescind a contract based on duress must promptly repudiate it by tendering back the benefits

6

conferred under the agreement, i.e., the consideration. *See S. Bay Bos. Mgmt.*, 587 F.3d at 41; *Am. Airlines, Inc. v. Cardoza-Rodriguez*, 133 F.3d 111, 119 (1st Cir. 1998) ("The related tender-back doctrine requires a party seeking to avoid a contract based on duress to first return any consideration received.").

Neither Ndu's complaint nor the parties' other filings suggest that such a return happened. Motion at 7; *see generally* FAC; Response. Therefore, the MOU's release of claims is enforceable because, regardless of whether Ndu was under duress when he signed it, he ratified it by retaining the consideration. *See Veilleux v. Fulmer,* No. Civ. 99-0148-B, 2000 WL 898451, at *1 (D. Me. 2000) ("Plaintiff's silence during the more than four year period prior to his claim of duress amounted to ratification of the 1994 agreement as a matter of law."); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 24 (1st Cir. 1993) (concluding that a duress argument was waived where the party purportedly under duress waited several months to assert the argument and accepted benefits under the challenged agreement); *In re Boston Shipyard Corp.,* 886 F.2d 451, 455 (1st Cir. 1989) ("It is well-settled, however, that a contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." (cleaned up)).

Ndu's ADEA claim requires a specific analysis because releases that do not comply with the Older Workers Benefit Protection Act (OWBPA) are unenforceable against ADEA claims regardless of whether the employee tendered back the

consideration they received.  *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-28 (1998).  The MOU in this case complies with the statute because it contains the OWBPA-required elements for waiver.  *See* MOU ¶¶ 6, 11, 15, 18-20 (outlining the OWBPA requirements); 29 U.S.C. § 626(f)(1)(A)-(G)[6].  Because the University complied with the OWBPA in drafting the MOU, Ndu was required to tender back the $144,841.52 before he could challenge its enforceability.  *See Zanoli v. Keurig Dr. Pepper*, No. 1:19-cv-12363-ADB, 2020 WL 3105033, at *7 (D. Mass. June 11, 2020) ("[T]he totality of the circumstances did not prevent Plaintiff from making a knowing and voluntary waiver under federal common law.  Further, even if Plaintiff's waiver was not knowing and voluntary, his subsequent conduct—accepting the severance and benefits from Defendant—ratified the agreement." (cleaned up)); *see also Oubre*, 522 U.S. at 439 (Thomas, J., dissenting) ("Where a release complies with the statute but is voidable on other grounds (such as fraud), the OWBPA does not relieve an

---

[6] In relevant part, the OWBPA says that "a waiver may not be considered knowing and voluntary unless at a minimum—"

> **(A)** the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> **(B)** the waiver specifically refers to rights or claims arising under this chapter;
> **(C)** the individual does not waive rights or claims that may arise after the date the waiver is executed;
> **(D)** the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> **(E)** the individual is advised in writing to consult with an attorney prior to executing the agreement;
> **(F) (i)** the individual is given a period of at least 21 days within which to consider the agreement; . . .
> **(G)** the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;
> . . . .

29 U.S.C. § 626(f)(1)(A)-(G).

employee of the obligation to return the consideration received before suing his employer . . . .").

### B. Ndu's claims are time barred and lack factual support.

Even if the MOU were unenforceable, Ndu's claims are either time-barred or fail to allege sufficient facts to establish entitlement to relief. Ndu received his right to sue letter from the EEOC on March 20, 2025. ECF No. 20-3. That letter contained an information sheet notifying Ndu of upcoming important dates. *Id.* at 3. The notice states that "[i]f you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**." *Id.* (emphasis in original). Ndu does not dispute that he received this notice on March 20, 2025, that he was required to file his lawsuit by June 18, 2025, and that his lawsuit was in fact docketed on July 11, 2025. *See* Response at 10. Instead, Ndu states that "[t]he management systems shows that [he] originally filed the lawsuit on June 13th, 2025, within the deadline (see Exhibit 4). However, due to system error, the Court filed the lawsuit on July 11, 2025," and he asks this Court to apply the doctrine of equitable tolling to deem his filing timely. *Id.*; ECF No. 19.

Exhibit 4 (which is attached to Ndu's "Motion to Deem Filing as Timely Nunc Pro Tunc") shows an email from Ndu to the Clerk's Office that he claims to have sent on June 13, 2025, at 4:45 p.m. ECF No. 19-1. A review of pro se filings from June 13, 2025, and surrounding dates shows no email filing from Ndu.[7] As Plaintiff, Ndu is

---

[7] The Clerk's Office retains all electronic pro se filings in the Court's computer system, marked with the date received.

responsible for ensuring his filing is received by the Clerk's Office.  *See Walker v. Jastremski*, 430 F.3d 560, 563 (2d Cir. 2005) (emphasis in original).  ("[A] counseled litigant has *absolute* control over whether to hand-deliver a document to the court rather than submit to the uncertainties of the mails. . . ."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *id.* 5(d)(3)(B) (governing electronic filings by an unrepresented party); *Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 97 (D. Mass. 2009) ("When a complaint is mailed to the clerk's office, filing is complete only upon the clerk's receipt of the complaint." (cleaned up)).  Ndu has not shown that his filing was received by the Clerk's Office on time or that a Court error delayed docketing.  Therefore, the filing date is July 11, 2025, *see* Complaint (ECF No. 1), and Ndu's complaint should be dismissed as untimely filed.  *See Murphy v. Aero-Med, Ltd.*, 345 F. Supp. 2d 40, 44 (D. Mass. 2004) ("[w]hen a defendant raises the statute of limitations as a defense, the plaintiff bears the burden of showing that the case was timely filed"); *Rice v. New England College*, 676 F.2d 9, 10-11 (1st Cir. 1982) (affirming dismissal of Title VII claim filed 91 days after receipt of EEOC's right to sue notice).

Next, Ndu's WPEA claim should be dismissed because the statute does not apply to him.  Ndu is not a federal employee and therefore cannot state a claim under the WPEA.  *See Gallagher v. Amedisys, Inc.*, No. 17-cv-11390, 2018 WL 2223673, at *7 n.3 (D. Mass. May 15, 2018) ("Because Plaintiff does not claim to be a federal employee, he cannot state a [WPEA] claim"); *Grassick v. Holder*, No. 09-cv-00587, 2012 WL 1066691, at *3 (D.R.I. Mar. 28, 2012) ("[The WPEA] protects certain federal

employees from agency reprisals for whistleblowing activities"); 5 U.S.C. § 2302 (prohibiting certain personnel practices by federal agencies).

In Ndu's proposed second amended complaint, he seeks to replace the WPEA claim with a state law claim under the Maine Human Rights Act (MHRA).  Even if he were granted leave to amend, Ndu cannot recover damages under his MHRA claim because he did not bring it within the required 90-day period.  *See* 5 M.R.S.A. § 4622(1)(B).  Ndu's proposed addition of a Maine Whistleblowers' Protection Act (MWPA) suffers the same fate.  *See* SAC (ECF No. 23-1) at 3.  "[T]he MWPA provides no private right of action, [thus] plaintiffs may file a civil action under the MHRA." *Osher v. University of Me. Sys.,* 703 F. Supp. 2d 51, 64 n.13 (D. Me. 2010).  However, as noted, any claim under the MHRA is time barred.  Therefore, Ndu cannot recover damages through the proposed MWPA claim because it is not an independent cause of action and must be brought through the MHRA.

Finally, Ndu has not stated a claim under the Equal Pay Act (EPA), *see* 29 U.S.C. § 206(d), because it prohibits employers from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work."  *Id.*  Ndu alleges that the University discriminated against him based on his race, national origin, color, age, disability, and participation in protected activity.  FAC at 4; SAC at 4-5.  But he does not

11

plausibly allege that he was paid differently because he is a man.  Therefore, Ndu's EPA claim should be dismissed.[8]

### III. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the University's Motion to Dismiss (ECF No. 17), **DENY** Ndu's Motion to Deem Filing as Timely (ECF No. 19), and **DENY** his Motion to Amend the Complaint (ECF No. 21) and the associated Motion for Leave to File a Corrected Complaint (ECF No. 23).  I recommend that the Court **MOOT** the Motion for a Default Judgment (ECF No. 33). Even if there was sanctionable conduct by the University—which there was not—the Court cannot enter a default judgment against a defendant when the complaint fails to state a claim for relief.  *See, e.g., Standard Fire Ins. Co. v. Carr*, No.: 2:18-cv-01022-SGC, 2019 WL 4466664, at \*6 (N.D. Ala. Sept. 18, 2019) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 (11th Cir. 1997)) ("In doing so, the undersigned is mindful that regardless of a party's misconduct justifying sanctions, 'a default judgment cannot stand on a complaint that fails to state a claim.'").  Finally, I recommend that the Court **MOOT** any other pending motions.

---

[8] Additionally, this Court lacks jurisdiction to decide Ndu's state law claims because he has failed to plead a valid federal claim or establish diversity of citizenship.  *See Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (noting that it is generally an abuse of discretion for a federal court to retain supplemental jurisdiction over state law claims when all federal claims have been dismissed early in a case).

## *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: June 17, 2026

/s/ Karen Frink Wolf
United States Magistrate Judge

13