UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| IKECHUKWU NDU, Plaintiff, | ) ) ) | |
| v. | ) | No. 2:25-cv-00353-JAW |
| UNIVERSITY OF MAINE SYSTEM, Defendant. | ) ) ) | |

**ORDER AFFIRMING RECOMMENDED DECISION OVER OBJECTION**

A former employee filed this lawsuit against a state university system alleging a series of claims related to his work for and firing from the university. The university filed a motion to dismiss. Concluding that the claims alleged are barred by a waiver of claims contained within a validly executed separation agreement signed by the parties, the court grants the motion to dismiss.

## I. PROCEDURAL HISTORY

### A. Initial Filings

On August 4, 2025, Ikechukwu Ndu, acting pro se, filed his first amended complaint against his former employer, the University of Maine System (University), alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act of 1990 (ADA), the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Age Discrimination in Employment Act of 1967 (ADEA), the Equal Pay Act of 1963 (EPA), and related Maine Statutes. *First Am. Compl.* (ECF No. 9) (*Compl.*).[1] Dr. Ndu alleged that the University had exhibited

[1] On November 18, 2025, Dr. Ndu filed a first motion to amend the first amended complaint. *Mot. to Amend a Compl.* (ECF No. 21). On November 25, 2025, Dr. Ndu moved to amend the first

"racist, discriminatory, and retaliatory" behaviors toward him during "contract renewal, tenure, and promotion and performance evaluations." *Id.* ¶¶ i-iii. Dr. Ndu also alleged that the University retaliated against him after he submitted multiple whistleblowing protected disclosures by excluding him from teaching at the graduate school of business. *Id.* ¶ vii. Dr. Ndu argued that the University ultimately constructively dismissed him and intentionally and willfully created an environment where it was allegedly unsafe, unhealthy and impossible for him to work. *Id.* ¶ xvii.

On October 28, 2025, the University filed a motion to dismiss, asserting that Dr. Ndu's claims are barred by a memorandum of understanding (MOU) he signed prior to his voluntary resignation. *Def.'s Mot. to Dismiss* at 1-2 (ECF No. 17) (*Def.'s Mot.*). Under the terms of the MOU, the University agreed to pay Dr. Ndu a total of $144,841.52 in exchange for releasing the University from all legal claims related to his employment. *Id.*, Attach. 1, *Memo. of Understanding* ¶ 6 (*MOU*). The MOU included the following key passage:

> In consideration of the promises and undertakings of the University herein, Dr. Ndu, for himself, his heirs, executors, assigns and successors, hereby releases and forever discharges separately and collectively the University, together with the University's affiliated campuses, and its directors, trustees, officers, employees, agents, successors, insurers and assigns, and each and all thereof, of and from any and all manner of actions, suits, damages, attorney fees, and claims of whatsoever kind or nature, in law or in equity, whether known or unknown, suspected or unsuspected, now existing or which may result, as of the effective date of this Agreement . . . relating to or arising out of his employment with

amended complaint a second time to substitute the WPEA claim with the Maine equivalent, the Maine Whistleblowers Protection Act (MWPA), and to add a claim under the Maine Human Rights Act (MHRA). *Mot. for Leave to File a Corrected/Modified Proposed Am. Compl.* at 2 (ECF No. 23). On December 16, 2025, Defendant filed a response in opposition. *Def.'s Opp'n to Pl.'s Mot. for Leave to file a Corrected/Modified Proposed Am. Compl.* (ECF No. 27). On December 30, 2025, Dr. Ndu filed his reply. *Pl.'s Resp. to Def.'s Opp'n to Pl.'s Mot. for Leave to File a Corrected/Modified Compl.* (ECF No. 30).

> the University including, but not limited to, all the claims that were or could have been made, or any alleged violation by the University of any United States or State of Maine Constitutions, federal, state or local statutes, common laws, contracts, and/or agreements including but not limited to, the Maine Human Rights Act, the American with Disabilities Act and any of its amendments, Title VII of the Civil Rights Act, the Maine Whistleblower Protection Act, the Age Discrimination in Employment Act (including as amended by the Older Worker Benefit Protection Act), the Fair Labor Standard Act, the Maine Wage Payment Act . . . .

*Id.* ¶ 11.

On November 18, 2025, Dr. Ndu filed his opposition. *Pl.'s Resp. to Def.'s Mot. to Dismiss* (ECF No. 20) (*Pl.'s Opp'n*). On December 16, 2025, Defendant filed their reply. *Def.'s Reply Memo. in Support of its Mot. to Dismiss* (ECF No. 25) (*Def.'s Reply*). On December 30, Dr. Ndu filed a motion for leave to file a sur-reply, *Mot. for Leave to File Sur-Reply to Def.'s Reply Memo. in Support of its Mot. to Dismiss* (ECF No. 29), which Defendant opposed. *Def.s' Opp'n to Pl.'s Req. for Leave to File Sur-Reply* (ECF No. 31). Dr. Ndu replied on January 9, 2026. *Pl.'s Reply to Def.'s Opp'n to Pl.'s Req. for Leave to File Sur-Reply* (ECF No. 32).

Also on November 18, 2025, Dr. Ndu filed a motion to deem his complaint timely filed. *Mot. to Deem Filing as Timely filed Nunc Pro Tunc* (ECF No. 19) (*Mot. to Deem Timely*). The EEOC sent Dr. Ndu a right to sue letter on March 20, 2025, notifying him that he had 90 days from the date of the right to sue letter to file a complaint in federal court. *Pl.'s Opp'n*, Attach. 3, *EEOC Dismissal and Notice of Rights*. Dr. Ndu acknowledges that the right to sue letter required him to file his complaint by June 18, 2025, but he argues in his motion to deem his complaint timely filed that he attempted to file on June 13, 2025, but "a technical failure in the Court's

electronic filing system" caused the filing to delay until July 11, 2025. *Mot. to Deem Timely* at 1. On December 16, 2025, Defendant responded. *Def.'s Opp'n to Pl.'s Mot. to Deem Filing as Timely Filed Nunc Pro Tunc* (ECF No. 26). Dr. Ndu filed his reply on December 30, 2025. *Pl.'s Resp. to Def.'s Opp'n to Pl.'s Mot. to Deem Filing as Timely Filed Nunc Pro Tunc* (ECF No. 28).

On January 12, 2026, Dr. Ndu filed a motion for default judgment as a sanction. *Mot. for Default J. as a Sanction for Fraud on the Ct.* (ECF No. 33) (*Mot. for Default J.*). On January 28, 2026 Defendant filed a response in opposition. *Def.'s Opp'n to Pl.'s Mot. for Default J. as a Sanction for Fraud on the Ct.* (ECF No. 34). On February 11, 2026, Dr. Ndu replied. *Pl.'s Resp. to Def.'s Opp'n to Pl.'s Mot. for Default J. as a Sanction for Fraud on the Ct.* (ECF No. 35).

### B. The Magistrate Judge's Recommended Decision and Subsequent Filings

The pending motions came before the Magistrate Judge and, on June 17, 2026, she issued a recommended decision. *Recommended Decision on Mot. to Dismiss* (ECF No. 36) (*Rec. Dec.*). The Magistrate Judge recommended that the Court dismiss Dr. Ndu's complaint for two reasons: (1) the MOU is enforceable and covers the claims presented and (2) the federal claims are time-barred or lack factual support, and the state claims should be dismissed as retaining jurisdiction exclusively on state claims would be an abuse of discretion. *Id.* at 4-5. The Magistrate Judge further recommended denying Dr. Ndu's motion to deem his complaint timely filed, denying his first and second motions to amend the first amended complaint, mooting his motion for leave to file a sur-reply, and mooting the motion for default judgement

because even if there was sanctionable conduct by Defendant—which the Magistrate Judge says there is not— "the Court cannot enter default against a defendant when the complaint fails to state a claim for relief." *Id.* at 12 (citing *Std. Fire Ins. Co. v. Carr,* 2019 U.S. Dist. LEXIS 158898 (N.D. Ala. Sept. 18, 2019)).

Because the Magistrate Judge reviewed the University's motion under 28 U.S.C. § 636(b)(1)(B), Dr. Ndu has a right to de novo review by a district judge upon filing an objection within fourteen days of being served. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)-(3). On July 1, 2026, Dr. Ndu filed a timely objection. *Statement of Objs. to Magistrate's Recommended Decision* (ECF No. 37) (*Pl.'s Objs.*). Dr. Ndu also filed additional documents on July 2, 2026. *Sealed Addt'l Attachs.* (ECF No. 38) (hospital discharge on March 28, 2024 recommending remote work until April 18, 2024).

On July 4, 2026, Dr. Ndu filed an emergency motion to retroactively extend the time for filing objections and amended his first set of objections to the recommended decision. *Pl.'s Combined Emer. Mot. for Retroactive Extension of Time to File Objs. and for Leave to Amend Statement of Objs.* (ECF No. 39). Dr. Ndu explained that he has a chronic illness that occasionally produces flare-ups, which impair his cognitive functioning and such a flare up occurred during the period of response to the recommended decision, so he failed to apprehend "the specific procedural requirements regarding attaching an electronic affidavit to the email header to verify timely service of the initial complaint." *Id.* Also on July 4, 2026, Dr. Ndu filed an amended statement of objections to the Magistrate Judge's recommended decision.

*Am. Statement of Objs. to Magistrate's Recommended Decision* (ECF No. 40). The amended objections differ only in that Dr. Ndu includes a declaration of his allegedly timely electronic filing on June 13, 2025 and further email evidence of the June 13, 2025 filing. *Id.*, Attachs. 1-2. On July 6, 2026, he submitted an additional attachment. *Sealed Addt'l Attach.* (ECF No. 41).[2] The Court referred the emergency motion to retroactively extend the deadline for filing objections to the Magistrate Judge. On July 7, 2026, the Magistrate Judge issued a text order granting Dr. Ndu's emergency motion. (ECF No. 42). On July 23, 2026, Defendant filed its response to Dr. Ndu's objections. *Resp. to Obj. to Recommended Decision* (ECF No. 43) (*Def Resp. to Obj.*). On July 24, 2026, Dr. Ndu filed an additional motion for leave to file a medical letter. *Mot. for Leave to File Medical Letter* (ECF No. 44).

## II. THE PARTIES' POSITIONS

### A. Plaintiffs' Objections to Magistrate's Recommended Decision

Dr. Ndu makes twelve objections. In the first and second objections he states that the University's conduct was so extreme and outrageous that it constitutes a claim for intentional infliction of emotional distress (IIED), which voids the MOU, as Dr. Ndu "was 'forced' to sign the MOU because he thought there was no reasonable alternative." *Pl.'s Objs.* at 2-5. Third, Dr. Ndu argues that the tender-back rule does not apply because the MOU did not comply with the requirements of the Older Workers Benefit Protection Act (OWBPA) and because "ratification cannot validate a

[2] This substance of this attachment is identical to a prior filed additional attachment. *Compare Sealed Addt'l Attachs.* (ECF No. 38) (hospital discharge on March 28, 2024 recommending remote work until April 18, 2024), *with Sealed Addt'l Attach.* (ECF No. 41) (same).

severance agreement if it was originally signed under coercion, duress or undue influence," and that, regardless, the rule does not apply because his claims come under Title VII, the MHRA, the EPA, the OWBPA, the ADA, and ADEA, so he "does not have to give back the severance money just to file a complaint or sue." *Id.* at 5-9. Fourth, Dr. Ndu claims that the Magistrate Judge committed "clear error" in footnote four of the recommended decision, and thus he should be allowed to expand the record under Rule 72(b)(3).[3] *Id.* at 9-12. Fifth, Dr. Ndu reiterates that his initial filing was June 13, 2025, not July 11, 2025. *Id.* at 12-14. Sixth, Dr. Ndu claims that the WPEA applies because the University receives significant federal funding. *Id.* at 14-15. Seventh and eighth, Dr. Ndu argues that his proposed second amended complaint, seeking to replace the WPEA claim with a MWPA claim and to add state law claim under MHRA, is timely, referencing objection five. *Id.* at 15-17. In the ninth though twelfth objections, Dr. Ndu claims the Magistrate Judge is incorrect about the viability of his EPA claim, the appropriateness of retaining his state law claims, the recommendation to moot the motion for default judgment, and the recommendations to deny him further ability to amend the complaint. *Id.* at 17-20.

---

[3] Footnote four reads:

> Although not part of the motion to dismiss record, Ndu argues that he was not able to obtain the advice of counsel because he was hospitalized following his resignation from the University. Response at 8. However, the exhibit he cites for that assertion shows that he was admitted to a hospital in Connecticut nearly two months after signing the agreement. *Compare* MOU at 5, *with* Exhibit 10 (ECF No. 20-6). In its entirety, the exhibit reads as follows: "Ike Ndu was admitted on 10/22/2024. He may work from home until follow up appointment in the clinic where work status will be re-evaluated." ECF No. 20-6 (cleaned up).

*Rec. Dec.* at 3 n.4.

### B. Defendant's Response to Plaintiff's Objections to Magistrate's Recommended Decisions

The University argues that Dr. Ndu has merely reiterated his arguments rather than demonstrated factual or legal error in the Magistrate's Recommended Decision. *Def Resp. to Obj.* at 1. The University objects to Dr. Ndu raising a new argument in his objection to the recommended decision, arguing this is prohibited. *Id.* at 2. The University otherwise agrees with the Magistrate Judge's Recommended Decision, arguing that the motion to dismiss based on the binding MOU signed by parties should be granted. *Id.* at 3. The University further echoes the Magistrate Judge's determination that the claims under the ADA, Title VII, and the ADEA are time barred, arguing that Dr. Ndu's own exhibits show that the Court did not receive the documents Dr. Ndu purportedly sent on June 13 until July 11. *Id.* at 5-7. The University argues that whether Dr. Ndu received federal funding is irrelevant for the purposes of mounting a WPEA claim, because he is not a federal employee of a federal agency. *Id.* at 7. The University also characterizes Dr. Ndu's allegation of discrimination in violation of the EPA as legally conclusory. *Id.* at 8. Finally, the University reiterates its position that it did not engage in "fraud on the court," and agrees with the Magistrate Judge's recommendation to dismiss Dr. Ndu's motion for default judgement as a sanction. *Id.* at 8-9.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, at minimum, "a short and plain statement

of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (first quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable

inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## IV. DISCUSSION

As the Magistrate Judge indicated, because the authenticity and scope of the MOU are not in dispute, it may be considered at the motion to dismiss stage.[4] *Rec. Dec.* at 5. Based on the clear language of the MOU, Dr. Ndu relinquished all rights to pursue redress against the University in exchange for a substantial monetary payout. After engaging in de novo consideration as to whether the waiver was sufficiently knowing and voluntary to be enforceable and evaluating Dr. Ndu's claim that the MOU was the product of duress, the Court concludes that the Magistrate Judge correctly determined that the presence of the MOU alone is sufficient to dismiss Dr. Ndu's claims.

### A. The MOU is Valid and Plaintiff's IIED Claim Fails to Establish it was the Product of Duress

The Court agrees with the Magistrate Judge's determination that the facts available demonstrate that Dr. Ndu knowingly and voluntarily agreed to the MOU. *Rec. Dec.* at 6. As the Magistrate Judge explained, determining whether a waiver or release of claims was knowing and voluntary is a totality of the circumstances test, considering the following factors:

---

[4] As the Magistrate Judge observed, Dr. Ndu has not challenged the authenticity of the MOU and has instead in his objections argued about its enforceability. In these circumstances, the First Circuit has authorized the Magistrate Judge and this Court to consider the contents of the MOU in ruling on the motion to dismiss. *See Irizarry-Sierra v. Bisignano*, 158 F.4th 43, 49 (1st Cir. 2025) ("Without these exceptions, the district court's inquiry into the feasibility of a complaint would be hamstrung by allowing plaintiffs to thwart the consideration of a critical document merely by omitting it from the complaint") (internal quotations omitted).

> (1) the plaintiff's education, business experience, and sophistication; (2) the parties' respective roles in deciding the final terms of the arrangement; (3) the agreement's clarity; (4) the amount of time available to the plaintiff to study the agreement before acting on it; (5) whether the plaintiff had independent advice—such as the advice of counsel—when [signing] the agreement; and (6) the nature of the consideration tendered in exchange for the waiver.

*Smart v. Gillette Co. Long-Term Disab. Plan,* 70 F.3d 173, 181 n.3 (1st Cir. 1995).

As all parties agree, Dr. Ndu is an educated and experienced professional. As evidenced by the email chain among the University's Vice President of Human Resources, the University's Grievance Representative, and Dr. Ndu, Dr. Ndu personally reviewed the MOU before executing it and clarified multiple details of the release. *Def's Reply,* Attach 1 at 4-6.[5] This makes clear that Dr. Ndu carefully reviewed the terms of the agreement he signed, and had the opportunity to raise issues with any terms he believed were inaccurate or unfair.

Moreover, Dr. Ndu made explicit representations that he had been notified of his right to consult with an attorney. *Def.'s Mot.,* Attach. 1 at 4-5. Dr. Ndu alleged in his opposition to the University's motion to dismiss that, due to his recent hospitalization, he was "unable to obtain independent advice of counsel and did not understand the agreement and did not execute the Agreement voluntarily." *Pl.'s Opp'n.* at 8. In his fourth objection to the recommended decision, Dr. Ndu argued

[5] Ordinarily, in weighing a Rule 12(b)(6) motion, a court "may not consider any documents that are outside of the complaint." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001). There is "a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson v.* Page, 987 F.2d 1, 3 (1st Cir. 1993)). The Court notes that Dr. Ndu contests that this email exchange is reported in full. *Mot. for Default J.* at 1-2. He does not, however, allege that the exhibit submitted by the University is inauthentic but merely incomplete. *Id.* Moreover, in his motion, he produces the same email. *Id.*, Attach 2 at 1-2. Because the parties do not contest whether Dr. Ndu sent the email dated August 27, 2024, the Court considers it for the purposes of this motion.

that the Magistrate Judge misunderstood his argument and assumed he was referring to his subsequent hospitalization in October 2024, rather than his previous hospitalization in March of that same year. *Pl.'s Objs.* at 9-12. However, Dr. Ndu does not explain why this clarification should change the determination that the waiver of claims was knowing and voluntary. By the time he executed the MOU, Dr. Ndu's medical accommodations from the recent hospitalization had expired months prior. *Compl.* ¶ xiii.[6] He otherwise fully reviewed and contested multiple elements of the MOU. *Def's Reply,* Attach 1 at 4-6. He has made no allegation as to how his physical or mental condition caused him to be incapable of understanding the MOU as a whole or the waiver of claims it included. *See Rivera-Flores v. Bristol-Meyers Squibb Caribbean,* 112 F.3d 9, 13 ("mere evidence of diagnostic labels without content tying them to capacity to give valid consent is inadequate").

Dr. Ndu instead argues that this hospitalization caused his failure to obtain independent advice of counsel. *Pl.'s Opp'n.* at 8. However, it was not the University's responsibility to ensure Dr. Ndu obtained counsel. Under the OWBPA, their only obligation was to make clear that he had the right to review his MOU with an advisor or attorney of his choice and to give him a reasonable time in which to do so.[7] The

---

6 In his amended complaint, Dr. Ndu alleges:

> The defendant retaliated against the plaintiff . . . despite the doctors['] authorizing the plaintiff to work from home in the meantime in March to April 2024 after the plaintiff's hospitalization.

*Am Compl.* ¶ xiii. The MOU is dated August 29, 2024. MOU at 5. Dr. Ndu does not explain why a March hospitalization from which he was released to work at home in March and April affected his ability to knowingly and voluntarily enter into an agreement in late August of the same year.

7 Paragraph 15 of the MOU reads:

evidence, including Dr. Ndu's own confirmation in writing, demonstrates that he was adequately informed of these rights. MOU ¶ 18. Consequently, Dr. Ndu's failure to obtain counsel does not present grounds on which to void the MOU. Finally, the University paid Dr. Ndu valuable consideration of $144,841.52 in exchange for the proffered waiver of claims – an amount Dr. Ndu himself negotiated. Taken together, these factors confirm that the waiver of claims was knowing and voluntary.

Dr. Ndu argues in his first objection that he "was fearful that Defendant would unfairly dismiss Plaintiff with little or no benefits at all based on other alleged grounds." *Pl.'s Objs.* At 4. But "duress, without more, [may not] be inferred from merely the emotional and financial stress associated with loss of a job." *Melanson v. Browning-Ferris Indus.* 281 F.3d 272, 277 (1st Cir. 2002) (affirming the district court's dismissal of Melanson's claims because there was "no genuine issue of material fact regarding whether Melanson made a knowing and voluntary release of her rights"). This fear, consequently, does not establish grounds upon which to conclude the MOU was a product of duress.

While the Magistrate Judge inferred from Dr. Ndu's initial filings that he was raising an economic duress argument as grounds upon which to void the MOU, *Rec. Dec.* at 5, Dr. Ndu argues instead in his first and second objections that the

> The Parties are advised to consult with an advisor or attorney of their choice before signing this Agreement and, by signing, each represents that he/it has either done so or had the opportunity to do so, that they fully understand and fully agree to each and every provision in this Agreement, and the normal rule of construction to the effect that any ambiguities in the Agreement are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

MOU ¶ 15.

University's conduct was so egregious that it constituted IIED, making the MOU voidable. *Pl.'s Objs.,* at 2-5.

As a threshold matter, the Court agrees with the objection the University raises to this claim: a party is not permitted to present new arguments to the District Court Judge that were not previously raised to the Magistrate Judge. *Def. Resp. to Obj.* at 2.[8] When a pretrial motion is referred to a Magistrate Judge for hearing, the "parties are required to take before him, not only their 'best shots' but all of their shots." *Singh v. Superintending School Committee of City of Portland,* 593 F. Supp. 1315, 1318 (D. Me. 1984). Nevertheless, even if the Court considers the claim, it does not change its ultimate disposition in the instant case.

Dr. Ndu's claim that the University's conduct constituted IIED such that the MOU was a product of duress and thus not enforceable fails for the same reason the Magistrate Judge recommended dismissal of his other claims: he has not provided the Court with sufficient factual allegations to ground his legal conclusions. When considering a motion to dismiss, the reviewing court must distinguish between a complaint's factual and legal statements and then determine "whether the *factual* allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley*, 657 F.3d at 46) (emphasis added)). In doing so, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz*, 669 F.3d at 55).

[8] Dr. Ndu claims that he pled IIED in his initial Complaint. *Pl.'s Objs.*, at 2. However, the Amended Complaint, which is the operative pleading, does not raise an IIED claim.

Dr. Ndu's legal allegations are dramatic, but he has failed to provide the court with the facts upon which those allegations are predicated. In his objection to the Magistrate Judge's Recommended Decision, Dr. Ndu alleges that the University's acts were so extreme and outrageous as to establish an IIED claim, but he does not detail any specific actions the University took. *Pl.'s Objs.* at 2-3. He alleges that the University's conduct "resulted in hospitalizations of Plaintiff where he almost lost his life." *Pl.'s Objs.* at 2. However, he has not articulated what conduct caused these mental and physical reactions, the nature of the symptoms he experienced, or any grounds by which to infer the University's intent behind their conduct. In evaluating the merits of a motion to dismiss, the Court cannot accept legal conclusions unsupported by predicate facts. Dr; Ndu's failure to plead sufficient facts underlying his perception is fatal to his claim that the MOU was the product of duress: the Court is simply unable to evaluate the plausibility of Dr. Ndu's characterization of the University's conduct.

**B. The MOU's Validity Vitiates the Remaining Objections**

Because the MOU is valid,[9] and because the totality of facts available to the court shows that Dr. Ndu knowingly and voluntarily agreed to a broad release of claims stemming from his employment at the University, the Court cannot hear Dr. Ndu's claims. This means there is no choice but to dismiss the action. As the presence

9 Dr. Ndu's third objection argues that Magistrate Judge's determination that the MOU complied with the requirements of the OWBPA was incorrect. However, Dr. Ndu failed to object with specificity as to which of the "strict statutory criteria" the MOU did not satisfy. Nevertheless, the Court has conducted its own review of the requirements set out in 29 U.S.C. § 626(f)(1)(A)-(G) and independently determined that the Magistrate Judge correctly concluded that the MOU complied with the OWBPA and thus is enforceable.

of a valid MOU is dispositive in this case, it is unnecessary to resolve Dr. Ndu's objections to the alternative grounds the Magistrate Judge laid out for dismissal. Specifically, the Court need not determine whether the claims are time barred (objections five, seven, and eight), whether Plaintiff qualifies as a federal employee for the purposes of the WPEA (objection six), whether Plaintiff has pled adequate facts under the EPA to establish a claim for relief (objection nine), or whether Dr. Ndu has successfully established diversity jurisdiction (objection ten). Finally, because Dr. Ndu's claims have been dismissed, the Court further agrees that the motion for default judgement and other pending motions are moot and declines to adopt Dr. Ndu's position in objections eleven and twelve. Even assuming Dr. Ndu was correct as to each of these objections, none would alter the ultimate conclusion that he knowingly and voluntarily released his right to bring the same claims he now seeks to pursue.

## V. CONCLUSION

The Court reviewed and considered the Magistrate Judge's Recommended Decision together with the entire record. Having made a de novo determination of "disputed portions of the report and recommendation," the Court affirms the Recommended Decision of the Magistrate Judge over Dr. Ndu's objections and dismisses the case. *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).

Thus, consistent with the Magistrate Judge's recommendation and for the same reasons set forth in the recommended decision and further explained herein, the Court AFFIRMS Recommended Decision on Motion to Dismiss (ECF No. 36), GRANTS The University of Maine System's Motion to Dismiss (ECF No. 17), and

DISMISSES Ikechukwu Ndu's First Amended Complaint (ECF No. 9). Furthermore, the Court DENIES Ikechukwu Ndu's Motion to Deem Filing as Timely filed Nunc Pro Tunc (ECF NO. 19), Motion to Amend the Complaint (ECF No. 21) and Motion for Leave to File a Corrected/Modified Proposed Amended Complaint (ECF No. 23). The Court MOOTS Ikechukwu Ndu's Motion for Leave to File Sur-Reply to Defendant's Reply Memorandum in Support of its Motion to Dismiss (ECF No. 29) and his Motion for Default Judgment as a Sanction for Fraud on the Court (ECF No. 33).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2026